**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**

| | |
|---|---|
| **KEYONA TAYLOR,** individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>**FITNESS INTERNATIONAL, LLC,**<br><br>Defendant. | No. 4:26-cv-04270<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Keyona Taylor ("Plaintiff") brings this Complaint and the following cause of action against Defendant Fitness International, LLC ("Defendant") alleging as follows:

## INTRODUCTION

1. This case concerns Defendant Fitness International, LLC's violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.* and its regulations by sending two or more text messages to members of the Do Not Call Registry without their consent in a 12-month period.

2. Defendant operates a portfolio of health club brands, including LA Fitness, Esporta Fitness, City Sports Club, and Club Studio.

3. Plaintiff Keyona Taylor has a phone number registered with the National Do-Not-Call Registry and Plaintiff received numerous unwanted text messages from Defendant soliciting her to purchase gym memberships for Club Studio.

4. Plaintiff did not consent to receiving the text messages and responded to Defendant's text messages with "STOP" to be removed from Defendant's marketing list and to revoke any possible consent previously given.

5. Defendant failed to remove Plaintiff from its internal marketing lists and continued

to send her text message solicitations in violation of the TCPA.

6. Plaintiff brings this action on behalf of herself and others similarly situated who were harmed by Defendant's unlawful text message solicitations.

## PARTIES

7. Plaintiff Keyona Taylor is a natural person residing in Houston, Texas.

8. Defendant Fitness International, LLC is a California limited liability company with its principal address at 3161 Michelson Drive, Suite 600, Irvine, CA 92612. Defendant may be served via its registered agent, CT Corporation System, at 330 North Brand Boulevard, Glendale, CA 91203.

## JURISDICTION AND VENUE

9. This Court has original subject matter jurisdiction over Plaintiff's claims arising under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*, pursuant to 28 U.S.C. § 1331 because these claims present a federal question.

10. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity between Plaintiff, a citizen of Texas, and Defendant, a citizen of California, and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

11. This Court has personal jurisdiction because Defendant is registered to conduct business in Texas, transacts business in the Southern District of Texas, owns or uses real property in the Southern District of Texas, and the events giving rise to this action occurred the Southern District of Texas.

12. Venue is proper in the Southern District of Texas pursuant to 28 U.S.C. § 1391(b) because Defendant resides in the Southern District of Texas and a substantial part of the events or omissions giving rise to the claims occurred in the Southern District of Texas.

## TCPA BACKGROUND

13. Receiving unwanted telemarketing communications is a problem that most people in this country frequently face. For example, in 2025 alone, approximately 52 billion robocalls were placed in the United States.[1]

14. As the Supreme Court has explained, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants, Inc.,* 591 U.S. 610, 613 (2020).

15. The Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227 *et seq.*, seeks to protect consumers' privacy rights, namely, the right to be left alone from unwanted telemarketing calls and messages.

16. The TCPA provides for the creation of a National Do Not Call Registry, which allows consumers to register their telephone numbers and thereby indicate their desire to not receive telephone solicitations at those numbers. *See* 47 C.F.R. § 64.1200(c)(2).

17. The term "telephone solicitation" is broadly defined to mean "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 U.S.C. § 227(a)(4).

18. The statutory definition of telephone solicitations includes text messages sent to cell phones. 47 C.F.R. § 1200(e) ("the rules set forth . . . are applicable to any person or entity

[1] *Historical Robocalls by Time*, YOUMAIL: ROBOCALL INDEX, https://robocallindex.com/history/time.

making telephone solicitations or telemarketing calls or text messages to wireless telephone numbers"); *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016) ("A text message to a cellular telephone, it is undisputed, qualifies as a 'call' . . . ."); *see also Hall v. Smosh Dot Com, Inc.*, 72 F.4th 983, 985–86 (9th Cir. 2023) ("We have held that the receipt of unsolicited phone calls or text messages in violation of the TCPA is 'a concrete injury in fact sufficient to confer Article III standing.'"); *Sapan v. Shore Cap. Corp.*, No. 8:23-CV-01974-FWS-JDE, 2024 WL 4002620, at *6 (C.D. Cal. May 31, 2024) ("This definition [telephone solicitation] encompasses both calls and text messages").

19. So long as a number appears on the National Do-Not-Call Registry, it is unlawful for a company to place any telephone solicitations to that number. 47 U.S.C. § 227(c)(3)(F). A listing on the Registry "must be honored indefinitely, or until the registration is cancelled by the consumer or the telephone number is removed by the database administrator." *Id.*

20. One exception to this rule is that the TCPA allows a company to solicit a consumer whose phone number is on the National Do-Not-Call Registry when it has an "established business relationship" ("EBR") with that consumer. 47 U.S.C. § 227(a)(4) (excluding from the definition of "telephone solicitation . . . any person with whom the caller has an established business relationship").

21. The Federal Communications Commission defines an EBR to mean "a prior or existing relationship formed by a voluntary two-way communication between a[n] . . . entity and a" consumer on the basis of the consumer's "purchase or transaction with the entity within the eighteen (18) months immediately preceding the date of the telephone call . . . , which relationship has not been previously terminated by either party." 47 C.F.R. § 64.1200(f)(5).

22. Among other things, a consumer can terminate an EBR with a company by asking

the company to stop calling, even if the consumer continues to transact business with that company. *Id.* at § 64.1200(f)(5)(i).

23. Using the words "stop," "quit," "end," "revoke," "opt out," "cancel," or "unsubscribe" in reply to an incoming text message "constitutes a reasonable means per se to revoke consent." 47 C.F.R. § 64.1200(a)(10)

24. "If a reply to an incoming text message uses words other than 'stop,' 'quit,' 'end,' 'revoke,' 'opt out,' 'cancel,' or 'unsubscribe,' the caller must treat that reply text as a valid revocation request if a reasonable person would understand those words to have conveyed a request to revoke consent." 47 C.F.R. § 64.1200(a)(10).

25. "All requests to revoke prior express consent or prior express written consent made in any reasonable manner must be honored within a reasonable time not to exceed ten business days from receipt of such request." 47 C.F.R. § 64.1200(a)(10).

26. A consumer whose number is on the National Do-Not-Call Registry and if the consumer has received more than one telemarketing call within any twelve-month period by, or on behalf of, the same company after the consumer has revoked consent, can sue the company and seek the greater of actual damages or $500, a figure that may be trebled for willful or knowing violations. 47 U.S.C. § 227(c)(5).

27. It is simple for companies to avoid calling numbers listed on the National Do-Not-Call Registry. They can easily and inexpensively "scrub" their call lists against the National Do-Not-Call Registry database. The scrubbing process identifies those numbers on the National Do-Not-Call Registry, allowing companies to remove those numbers and ensure that calls are no longer placed to consumers who opt-out of telemarketing calls.

28. To avoid violating the TCPA by calling registered numbers, companies, *inter alia*,

must scrub their call lists against the National Do-Not-Call Registry at least once every thirty-one (31) days. *See* 16 C.F.R. § 310.4(b)(3)(iv).

29. Regulations implementing the TCPA also require companies to maintain Internal Do-Not-Call Registries. 47 C.F.R. § 64.1200(d). Once a company receives a request from a consumer not to receive calls, the number must be placed on the company's internally maintained do-not-call list (the "Internal Do-Not-Call List") within a reasonable time, not to exceed thirty (30) days from the date of the request. *Id*. at § 64.1200(d)(3).

30. It has long been the law that a seller of goods or services can be vicariously liable for TCPA violations even if the seller does not directly place or initiate the calls. *See Gomez v. Campbell-Ewald Co.*, 768 F.3d 871, 879 (9th Cir. 2014) ("a defendant may be held vicariously liable for TCPA violations where the plaintiff establishes an agency relationship, as defined by federal common law, between the defendant and a third-party caller").

31. The statutory provision that establishes a private right of action against an entity that violates the National Do-No-Call Registry restrictions broadly states that "[a] person who has received more than one telephone call within any twelve (12) month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection" may bring an action for damages and injunctive relief. 47 U.S.C. § 227(c)(5) (emphasis added).

32. Likewise, 47 C.F.R. § 64.1200(d)(3) provides that once a number is added to a company's Internal Do-Not-Call List, the company "on whose behalf the telemarketing call is made will be liable for any failures to honor the do-not-call request."

33. As explained by the FCC, the TCPA and its regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *See Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CC

Docket No. 92-90, Mem. Op. & Order, 10 FCC Rcd. 12391, 12937, ¶ 1.

34. The FCC reiterated this principle in 2005, when it stated that "a company on whose behalf a telephone solicitation is made bears the responsibility for any violation of our telemarketing rules, and calls placed by a third party on behalf of that company are treated as if the company itself placed the call." *See 1995 TCPA Reconsideration Order*; *Request of State Farm Mutual Automobile Insurance Company for Clarification and Declaratory Ruling*, Declaratory Ruling, 20 FCC Rcd. 13664, 13667 ¶ 7 (2005).

35. The FCC reaffirmed this in 2013, when it held that (a) a seller may, under principles of apparent authority, actual authority, and ratification, be liable for violations of § 227(c) by third parties, and (b) a seller may also be liable, under the express terms of § 227(c), for calls placed "on behalf of" the seller. *In re Joint Pet. filed by DISH Network LLC*, Declaratory Ruling, 28 FCC Rcd. 6574 (2013).

## FACTUAL ALLEGATIONS

36. Plaintiff Keyona Taylor registered her phone number XXX-XXX-9912 on December 10, 2004, with the National Do Not Call Registry.

37. Defendant Fitness International, LLC operates a portfolio of health club brands, including LA Fitness, Esporta Fitness, City Sports, Club, and Club Studio.

38. Defendant directly sends out text messages and/or phone calls to consumers to solicit business for its goods and services, or in the alternative, Defendant uses a third-party company to manage and send its marketing text messages and/or phone calls to consumers.

39. Plaintiff inquired into Defendant's services on or around January 28, 2026, to receive a free, 5-day guest pass for its Houston, Texas location on Elgin Street.

40. Based on information and belief, Plaintiff did not consent to receive calls or

messages from Defendant regarding solicitations for its goods and services.

41. On February 10, 2026, Defendant sent Plaintiff the first of several messages from a phone number listed as 713-263-5096, to Plaintiff's phone number on the National Do Not Call Registry, advertising its services:

> Club Studio: Rates are increasing Wed, Feb 11th! Join now to lock in the best current rates before they rise. Get it all under one roof! Join here: [URL link]
>
> Reply STOP to end msgs.

42. On February 20, 2026, Defendant sent a second message to Plaintiff, advertising its services:

> Club Studio: Current rates won't last much longer! Membership rates will be increasing soon. Act now and secure your rate before it's too late: [URL link]
>
> Reply STOP to end msgs.

43. Plaintiff replied to the second message on the same day, February 20, 2026, and clearly revoked any consent she may have previously given to receive these messages with "stop."

44. Based on information and belief, Defendant failed to remove Plaintiff from its marketing list after Plaintiff revoked consent to receive additional messages.

45. On February 24, 2026, Defendant sent Plaintiff a third message:

> Club Studio: Rates are increasing Thursday, Feb 26th. Don't wait! Now is the best time to lock in your rates: [URL link]
>
> Reply STOP to end msgs.

46. Plaintiff replied the same day, February 24, 2026, with "stop" and "I've already said to stop before. this is going to turn into harassment[.]"

47. Based on information and belief, Defendant again failed to remove Plaintiff from its marketing list after this clear revocation of consent.

48. On February 25, 2026, Defendant sent Plaintiff a fourth message:

> Club Studio: Rates increase tomorrow! Lock in your membership today and secure the best available rate before prices go up: [URL link]
>
> Reply STOP to end msgs.

49. Plaintiff replied the same day, February 25, 2026, with "STOP."

50. Based on information and belief, Defendant failed to remove Plaintiff's number from its list after this third revocation of consent by Plaintiff.

51. On March 10, 2026, Defendant sent Plaintiff a fifth message:

> Club Studio: membership rates are increasing soon! Now is the perfect time to lock in your membership at the best current rate before they go up: [URL link]
>
> Reply STOP to end msgs.

52. On March 18, 2026, Defendant sent Plaintiff a sixth message:

> We reset your guest pass for the Grant Opening Party Saturday, March 21st. Get another free guest pass again and try one of our specialty classes: [URL link]
>
> Reply STOP to end msgs.

53. On March 20, 2026, Defendant sent Plaintiff a seventh message:

> Club Studio: Rates are increasing next week! Lock in your membership this weekend before rates go up next week. Hurry! [URL link]
>
> Reply STOP to end msgs.

54. Plaintiff responded to this message on the same day, March 20, 2026, with "STOP."

55. Notwithstanding Plaintiff's four clear messages revoking her consent, Defendant continued to send messages to Plaintiff:

a. March 23, 2026: "Club Studio: Rates are increasing in the next few days! Now is the perfect time to lock in your lower price before it disappears. Join now: [URL link] Reply STOP to end msgs."

b. March 24, 2026: "Club Studio: Kalologie(R) Medspa Takeover 3/28 8am-

12pm! Get a free pass for special offers and a chance to win a free B-12 shot if you take class: [URL link] Reply STOP to end msgs."

c. March 25, 2026: "Club Studio: Rates are increasing tomorrow, March 26th! Last chance to get the best current rates. Hurry! Join now and save: [URL link] Reply STOP to end msgs."

d. April 7, 2026: "Club Studio: Secure your rates now! Get the current best reates before they increase this week. Speak with the sales crew or join here [URL link] Reply STOP to end msgs."

e. April 8, 2026: "Club Studio: Rates are increasing tomorrow! Locking in your rates today guarantees you the lowest current membership offers. Join now: [URL link] Reply STOP to end msgs."

f. April 10, 2026: "Club Studio: Join us May 10th for the Wings for Life World Run! Be part of Team Club Studio: [URL Link] Reply STOP to end msgs."

56. In response to the text on April 10, 2026, Plaintiff messaged for a fifth time, on April 13, 2026: "STOP."

57. Plaintiff received three more unsolicited text messages from Defendant:

a. April 13, 2026: "Club Studio: Wings for Life Club Run April 18th! Get a free pass and book a spot to prepare for the Wings for Life Run May 10th: [URL Link] Reply STOP to end msgs."

b. April 27, 2026: "Club Studio: We reset your guest pass! Get another to join us for National Fitness Day May 2nd 8am-1pm. Experience the club again: [URL link] Reply STOP to end msgs."

c. April 28, 2026: "Club Studio: Rates are increasing soon! Secure premium

amenities, boutique fitness classes, and cutting-edge equipment all under one roof: [URL link] Reply STOP to end msgs.

58. Plaintiff's efforts to opt out of text messages show that Defendant's systems for opting out are nonfunctional and that consumers are powerless to opt out of Defendant's solicitations.

59. Even when Plaintiff repeatedly and unambiguously revoked consent, Defendant knowingly and willfully sent several text messages to Plaintiff, a member of the Do Not Call Registry. After her revocations, Plaintiff never explicitly told Defendant in writing that she was consenting to receive additional text messages.

60. Plaintiff maintained her registration on the Do Not Call Registry because she did not want to receive unwelcome and annoying communications like the text messages she received from Defendant. Plaintiff was annoyed by the text messages she received from Defendant. Plaintiff felt that the text messages, particularly after her repeated requests to opt out, were intrusive and that they interfered with her use and enjoyment of her telephone.

## CLASS ACTION ALLEGATIONS

***Class Definition***

61. Plaintiff brings this action on behalf of herself and the following two described Classes in accordance with the Federal Rules of Civil Procedure 23:

> **Do Not Call Registry Class**: All natural persons residing in the United States who (1) registered their telephone number(s) with the National Do Not Call Registry; (2) at least 31 days after Do Not Call registration and in the four years prior to the filing of this lawsuit, received two or more text message solicitations from Fitness International, LLC on their cellular phone within a 12-month period; and (3) prior to receiving any such text message solicitations, had revoked consent to receiving text message solicitations from Fitness International, LLC by texting, for example, "Stop," "Quit," "Unsubscribe," or other words conveying revocation of consent, in response to a text message solicitation from Fitness International, LLC.

> **<u>Internal Do Not Call Class</u>**: All natural persons residing in the United States who (1) received two or more text message solicitations on their cellular phone from Fitness International, LLC within a 12-month period in the four years prior to the filing of this lawsuit; and (2) prior to receiving any such text message solicitations, had revoked consent to receiving such text message solicitations from Fitness International, LLC by texting for example, "Stop," "Quit," "Unsubscribe," or other words conveying revocation of consent, in response to a text message solicitation from Fitness International, LLC.

62. Excluded from this class definition are employees, officers, directors of Defendant, and attorneys appearing in this case, and any judge assigned to hear this action.

63. Plaintiff reserves the right to modify this class definition as he obtains relevant information, including telemarketing call records, through discovery.

64. Each of the persons identified in the two proposed classes has been harmed by the acts of Defendant because their privacy has been violated, they were subject to annoying and harassing calls that constitute a nuisance, and/or they were charged for incoming calls.

***This Action Meets the Requirements to be Certified as a Class***

65. Plaintiff is a member of the proposed Classes.

66. The proposed Classes can be identified through telephone records and databases used in transmitting the telemarketing calls and messages.

67. <u>Numerosity</u>: The number of Putative Class Members is believed to be in the hundreds or thousands, rendering the class so numerous that individual joinder of all Class Members is impracticable.

68. <u>Commonality</u>: There are questions of law and fact common to Plaintiff and to the proposed Classes, including, but not limited to, the following:

a. Whether Defendant sent text messages to persons who had previously registered their telephone numbers with the National Do Not Call Registry;

b. Whether Defendant sent text messages to members of the Do Not Call Registry

without their consent;

c. Whether Defendant sent text messages to members of the Do Not Call Registry after those persons sent communications revoking their consent;

d. Whether Defendant sent text messages to members of the Do Not Call Registry for the purpose of advertising any property, goods, or services;

e. Whether Defendant instituted procedures for maintaining a list of persons who request not to receive telemarketing calls;

f. Whether Defendant recorded residential telephone subscribers' requests for exclusion from telemarketing calls and honored those requests within a reasonable time from the requests being made;

g. Whether Defendant willfully or knowingly violated the TCPA and its regulations.

69. Typicality: Plaintiff's claims are typical of the claims of the proposed Putative Class Members. Plaintiff would only seek individual or actual damages if class certification is denied. In addition, Plaintiff is entitled to relief under the same causes of action and upon the same facts as the other Members of the proposed Putative Classes.

70. Adequacy: Plaintiff is an adequate representative of the proposed Putative Class because her interests coincide with, and are not antagonistic to, the interests of the Members of each proposed Putative Classes she seeks to represent. Plaintiff has retained counsel competent and experienced in TCPA and class action litigation. Plaintiff intends to prosecute this action vigorously. Plaintiff and her Counsel will fairly and adequately protect the interests of Members of the proposed Putative Class.

71. Superiority: Questions of law and fact common to the proposed Putative Class Members predominate over questions affecting only individual members, and a class action is

superior to other available methods for fair and efficient adjudication of the controversy. Liability will be determined based on a common set of facts and legal theories. Willfulness will be determined based on Defendant's conduct and knowledge, not upon the effect of Defendant's conduct on the Putative Class Members.

72. The statutory damages sought by each class member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendant's conduct. It would be virtually impossible for the Members of the proposed Putative Classes to individually redress effectively the wrongs done to them, as the TCPA has no attorney's fee shifting provision. Even if the Members of the proposed Putative Class themselves could afford such individual litigation, it would be an unnecessary burden on the courts. Furthermore, individualized litigation presents the potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendant's conduct. By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in just one case.

73. Injunctive and Declaratory Relief Appropriate: Defendant has acted on grounds generally applicable to the Putative Classes, thereby making final injunctive relief and corresponding declaratory relief with respect to the Putative Classes appropriate on a class wide basis. Moreover, on information and belief, and based on her experience, Plaintiff alleges that the calls made by Defendant and/or their affiliates, agents, and/or other persons or entities acting on Defendant's behalf that are complained of herein are substantially likely to continue in the future if an injunction is not entered.

## **CAUSES OF ACTION**

**COUNT I**
**VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT**
**(47 U.S.C. § 227, *et seq.*)**
**(Individually and on Behalf of the National Do Not Call Registry Class)**

Plaintiff re-alleges all preceding paragraphs of this Complaint and incorporates them here by reference.

74. The TCPA grants a private right of action to a person who receives more than one telephone call within a 12-month period in violation of TCPA laws and regulations protecting members of the Do Not Call Registry. See 47 U.S.C. § 227(c)(5).

75. For purposes of the TCPA, telephone "calls" include text messages.

76. TCPA regulations forbid telephone solicitations to any residential telephone subscriber who registered his or her telephone number on the Do Not Call Registry. 47 C.F.R. § 64.1200(c)(2).

77. For purposes of the TCPA, "telephone solicitation" is defined as a "call or message for the purpose of encouraging the purchase … [of] property, goods, or services" but excludes a call or message "to any person with that person's prior express invitation or permission." 47 U.S.C. § 227(a)(4).

78. At all times relevant to the allegations in this Complaint, Plaintiff was a residential telephone subscriber with her telephone number registered to the Do Not Call Registry.

79. Within a 12-month period, including but not limited to the period from January 2026 through the date of the filing of this Complaint, Defendant sent more than one text message to Plaintiff. The text messages encouraged Plaintiff to purchase Defendant's goods and services, specifically gym memberships.

80. Plaintiff did not invite Defendant to send her text messages or grant Defendant permission to send her text messages. In the alternative that Plaintiff ever granted prior consent to

text messages from Defendant, Plaintiff unambiguously revoked consent through text messages to Defendant as alleged.

81. A person aggrieved by violations of TCPA laws and regulations protecting members of the Do Not Call Registry may pursue injunctive relief; recover actual monetary loss or up to $500 per each violation, whichever is greater; or both. If violations of TCPA regulations protecting members of the Do Not Call registry are knowing or willful, the damages may be tripled. 47 U.S.C. § 227(c)(5).

82. Because Defendant disregarded Plaintiff's repeated attempts to revoke consent to receive text messages, because its systems for revoking consent by text message are ineffective and nonfunctional, and because Defendant was on notice that its system for revoking consent was ineffectual, Defendant's violations are knowing and willful.

83. Plaintiff and the Class accordingly demand judgment against Defendant for statutory damages, treble damages, attorney fees and costs, and any other relief provided by law.

**COUNT II**
**VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT**
**(47 U.S.C. § 227, *et seq.*)**
**(Individually and on Behalf of the Internal Do Not Call Registry Class)**

Plaintiff re-alleges all preceding paragraphs of this Complaint and incorporates them here by reference.

84. The TCPA grants the Federal Communications Commission authority to issue regulations protecting residential telephone subscribers' right to avoid receiving telephone solicitations to which they object. See 47 U.S.C. § 227(c).

85. The TCPA grants a private right of action to a person who receives more than one telephone call within a 12-month period in violation of TCPA laws and regulations protecting telephone subscribers' right to avoid telephone solicitations to which they object. See 47 U.S.C. §

227(c)(5).

86. The regulations implementing the TCPA provide that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls …." 47 C.F.R. § 64.1200(d).

87. The regulations implementing the TCPA further provide: "Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request …." 47 C.F.R. § 64.1200(d)(3).

88. Within a 12-month period, including but not limited to the period from January 2026 through the date of the filing of this Complaint, Defendant sent more than one text message to Plaintiff. The text messages encouraged Plaintiff to purchase Defendant's goods and services, specifically gym memberships.

89. Plaintiff did not invite Defendant to send her text messages or grant Defendant permission to send her text messages. In the alternative that Plaintiff ever granted prior consent to text messages from Defendant, Plaintiff unambiguously revoked consent through text messages to Defendant as alleged.

90. In violation of 47 C.F.R. § 64.1200(d)(3), Defendant did not record Plaintiff's

revocations of consent or place Plaintiff's name and telephone number on its internal do-not-call lists within a reasonable time after such revocations were made.

91. In further violation of 47 C.F.R. § 64.1200(d)(3), Defendant also did not honor Plaintiff's request to stop sending unwanted telemarketing texts.

92. A person aggrieved by violations of TCPA laws and regulations protecting residential telephone subscribers' right to avoid receiving telephone solicitations to which they object may pursue injunctive relief; recover actual monetary loss or up to $500 per each violation, whichever is greater; or both. If violations of such regulations are knowing or willful, the damages may be tripled. 47 U.S.C. § 227(c)(5).

93. Because Defendant disregarded Plaintiff's repeated attempts to revoke consent, because it did not maintain effective procedures to internally record and honor such revocations of consent, and because Defendant was on notice that its systems for internally recording and honoring revocations of consent were ineffectual, Defendant's violations are knowing and willful.

94. Plaintiff and the Class accordingly demand judgment against Defendant for statutory damages, treble damages, attorney fees and costs, and any other relief provided by law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and as a representative of all other persons similarly situated, prays for judgment against Defendant, awarding relief as follows:

a. Certifying the proposed National Do-Not-Call Registry Class under Fed. R. Civ. P. 23 and appointing Plaintiff and her counsel to represent the National Do-Not-Call Registry Class;

b. Certifying the proposed Internal Do-Not-Call Registry Class under Fed. R. Civ. P. 23 and appointing Plaintiff and her counsel to represent the Internal Do-Not-Call Registry

Class;

c. Damages in an amount to be determined at trial, or in the alternative, statutory damages under the TCPA of no less than $500 per violation, and up to $1,500 per each violation determined to be willful;

d. A decree enjoining Defendant from further violations of the TCPA including, but not limited to, violations of TCPA regulations protecting members of the Do Not Call Registry;

e. All applicable pre-judgment and post-judgment interest;

f. A reasonable attorney's fee to be paid out of any common fund created by virtue of this litigation;

g. All court costs and requiring Defendant to pay for class administration; and

h. All general, special, and equitable relief to which Plaintiff and the respective Members of the National Do-Not-Call Registry and Internal Do-Not-Call Class are entitled to by law.

**DEMAND FOR JURY TRIAL**

Plaintiff hereby demands that this matter be tried before a jury.

DATED: May 29, 2026

Respectfully submitted,

*/s/ Bruce W. Steckler*
Bruce W. Steckler
Texas Bar No. 00785039
**STECKLER WAYNE & LOVE PLLC**
12720 Hillcrest Rd., Suite 1045
Dallas, Texas 75230
Phone: (972) 387-4040
Fax: (972) 387-4041
bruce@stecklerlaw.com

Philip Krzeski
Nicolas R. Kaylor

(pro hac vice applications forthcoming)
**CHESTNUT CAMBRONNE PA**
100 Washington Avenue South, Suite 1700
Minneapolis, MN 55401
Phone: (612) 339-7300
Fax: (612) 336-2940
pkrzeski@chestnutcambronne.com
nkaylor@chestnutcambronne.com